# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

Mineral Point Consulting LLC,

    Plaintiff,

v.

Benhti Economic Development Corporation,

    Defendant.

Case No. 2:25-cv-868

**COMPLAINT**

For its Complaint against Defendant Benhti Economic Development Corporation ("BEDCO"), Plaintiff Mineral Point Consulting LLC ("Mineral Point") states and alleges:

## PARTIES

1.    Mineral Point is a limited liability company formed in the State of Wyoming with a principal place of business located at 6801 Jefferson Street NE, Suite 150 PMB 3150, Albuquerque, New Mexico. Mineral Point has a single member, who is an individual domiciled in Wisconsin. Mineral Point is thus a citizen of Wisconsin for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

2.    BEDCO is a corporation chartered under Tribal law by the Native Village of Minto ("the Tribe"), a federally recognized Indian tribe located in Minto, Alaska. BEDCO's principal place of business is located at 100 Cushman Street, Suite 306, Fairbanks, Alaska. BEDCO is a citizen of Alaska for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a). *See Wells Fargo Bank, Nat. Ass'n v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684, 693 (7th Cir. 2011) ("[A] corporation chartered under Native

American tribal law should be treated as a citizen of a state pursuant to § 1332(c)."). BEDCO's chartered subsidiaries include Minto Financial and Tolovana Financial.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

4. This Court has personal jurisdiction over BEDCO because this dispute is covered by contracts and agreements providing for exclusive jurisdiction in Wisconsin, and BEDCO has therefore consented to submit to personal jurisdiction in Wisconsin.

5. Venue is proper in this Court because this dispute is covered by contracts and agreements providing for exclusive jurisdiction and venue in Wisconsin for all disputes arising out of such agreements. Venue is also proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this district, as the services performed under the parties' contracts and agreements were performed in Wisconsin.

6. All requirements and conditions precedent to bringing this action have been satisfied, performed, or waived.

## FACTUAL ALLEGATIONS

### The Agreement

7. On December 3, 2022, BEDCO and Mineral Point executed the Executive Management Consultant Engagement and Services Agreement ("the Agreement"). A copy of the Agreement is attached as **Exhibit A**.

2

8. The Agreement was reviewed, authorized, and executed by BEDCO under Resolution No. 2022-18 of its Board of Directors. A copy of Resolution No. 2022-18 to Approve Executive Management Consultant Engagement and Management Services Agreement is attached as **Exhibit B**.

9. Under the Agreement, Mineral Point provided certain consulting services (the "Services") to BEDCO with respect to BEDCO and its subsidiaries' consumer lending operations. The scope of Services provided are described in Appendix A, which was attached to and incorporated into the Agreement. (Ex. A at 1, 13-14.)

10. The parties agreed that the Agreement would remain in effect for the longer of (1) five years, or (2) any period during which BEDCO or its subsidiaries maintained a balance on any loan or line of credit issued by it by a lender introduced to BEDCO by Mineral Point, unless the Agreement was terminated in accordance with the Agreement's terms. (*Id.* at 2.)

11. The Agreement permits either party to terminate the Agreement for any reason upon 90 days' written notice in the event of termination by BEDCO or 30 days' written notice in the event of termination by Mineral Point. (*Id.*)

12. As compensation for Mineral Point's consulting services, BEDCO agreed to pay Mineral Point a monthly fee for services ("the Services Fee") equal to three quarters of one percent (.075%) of monthly net revenue derived from the consumer lending operations conducted by BEDCO's wholly owned subsidiaries. (*Id.* at 3, 14.)

13. Under the Agreement, the Services Fee is calculated as of the close of business each month during the term of the Agreement. (*Id.* at 14.)

14. To enable the parties to calculate the Services Fee, the Agreement requires BEDCO to provide Mineral Point with monthly verification and access to financial reports. (*Id.*)

15. The Services Fee is due and payable to Mineral Point on the 15th day following the close of every month during the term of the Agreement. (*Id.*)

16. In the event that BEDCO withholds any payments from Mineral Point due to a dispute regarding the Services, BEDCO is required to provide Mineral Point with a detailed written notice setting forth the reason for refusing to pay and afford Mineral Point a reasonable opportunity to correct the disputed work. (*Id.* at 3.)

17. If any amount owed to Mineral Point remains delinquent for 30 days after the due date and BEDCO has not disputed the invoice, then any such amount incurs interest at a rate of 1.5% per month. (*Id.*) Mineral Point has the right to pause all work until all late payments are made. (*Id.*) If Mineral Point pauses work, Mineral Point remains entitled to payment under the Agreement while work is paused. (*Id.*)

18. The Agreement also provides that in the event of a termination by either party, BEDCO must pay Mineral Point for (1) all services rendered by Mineral Point during the term of the Agreement, including any Services provided by Mineral Point during the contractually required termination notice period, and (2) a termination fee equal to the sum of one half of one percent (.5%) of the monthly net revenue of BEDCO's consumer lending subsidiaries for every month that BEDCO maintained a balance on any loan or line of credit issued by any lender introduced to BEDCO by Mineral Point ("the Termination Fee"). (*Id.* at 2.)

19. Since the Agreement was executed, Mineral Point has continuously provided services to BEDCO and its subsidiaries. Until May 2025, BEDCO timely paid Mineral Point's invoices on a monthly basis.

20. Mineral Point has helped grow BEDCO's consumer lending business into a highly successful and profitable online lending business.

### BEDCO Breaches the Agreement

21. On May 9, 2025, consistent with the parties' past practices under the Agreement, Mineral Point provided an invoice to BEDCO for services rendered during the April 2025 billing period. The invoice requested payment in the amount of $90,549.57. A copy of the invoice is attached as **Exhibit C**.

22. BEDCO did not pay amounts due for services rendered in April 2025 by May 15, 2025, as required by the Agreement.

23. On May 16, 2025, Mineral Point sent an email to BEDCO requesting that it promptly issue payment as required by the Agreement.

24. BEDCO did not issue the requested payment.

25. BEDCO did not provide written notice of any dispute as to the fees reflected in the April 2025 invoice or the services rendered by Mineral Point. BEDCO has not provided any notice of a dispute regarding the Services.

26. To date, BEDCO has not made any payment for services rendered in April 2025.

27. On June 11, 2025, Mineral Point provided an invoice to BEDCO for services rendered during the May 2025 billing period. The invoice requested payment in the amount of $101,913.12. A copy of the invoice is attached as **Exhibit D**.

28. BEDCO did not pay amounts due for services rendered in May 2025 by June 15, 2025, as required by the Agreement.

29. BEDCO has not provided notice that it disputes the fee amount or services provided. It continues to benefit from the services Mineral Point provided but refuses to pay for those services.

## COUNT ONE
### Breach of Contract

30. Mineral Point realleges paragraphs 1 through 29 of this complaint.

31. The Agreement is a valid contract creating obligations between BEDCO and Mineral Point.

32. The Agreement required BEDCO to pay the Services Fee for April 2025 to Mineral Point by May 15, 2025.

33. BEDCO failed to pay the Services Fee by May 15, 2025. To date, BEDCO has not paid the Services Fee for April 2025.

34. The Agreement required BEDCO to pay the Services Fee for May 2025 to Mineral Point by June 15, 2025.

35. BEDCO failed to pay the Services Fee by June 15, 2025. To date, BEDCO has not paid the Services Fee for May 2025.

36. BEDCO breached the Agreement and continues to breach the Agreement by failing to pay Services Fees owed under the Agreement.

37. As a result of BEDCO's breach of the Agreement, Mineral Point has suffered damages in an amount to be determined at trial.

## COUNT TWO
### Unjust Enrichment

38. Mineral Point realleges paragraphs 1 through 29 of this complaint.

39. Mineral Point conferred a benefit on BEDCO by rendering the Services to BEDCO.

40. BEDCO voluntarily and knowingly accepted and retained the benefit conferred on it by Mineral Point.

41. In these circumstances, it is inequitable for BEDCO to accept and retain the benefit of the Services without paying for the Services.

**WHEREFORE**, Mineral Point requests the following relief:

1. Judgment in favor of Mineral Point and against BEDCO on the claims set forth above;

2. Awarding Mineral Point damages against BEDCO based on the claims set forth above, including but not limited to any and all unpaid Services Fees and interest on any late-paid amounts, in an amount exceeding $75,000 to be proven at trial;

3. Awarding Mineral Point its costs, disbursements, and attorneys' fees incurred in this matter;

4. Such other and further relief as the Court deems just and equitable.

Dated: June 17, 2025

/s/ Mark Vyvyan
Mark W. Vyvyan (#1024299)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street
Suite 1500
Minneapolis, MN 55402-4400
(612) 492-7000
mvyvyan@fredlaw.com

*Attorney for Plaintiff*